**SIGNED this 09th day of April, 2007.**

_____
**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HENRY ALAN GREEN | ) | CASE NO. 06-11761-FM |
| ALLEGED DEBTOR | ) | INVOLUNTARY CHAPTER 7 |
| | ) | |
| TERESA M. GREEN | ) | |
| ALLEGED DEBTOR | ) | CASE NO. 06-11762-FM |
| | ) | INVOLUNTARY CHAPTER 7 |

MEMORANDUM OPINION

_____The Court held an initial hearing upon the Involuntary Petition filed by Josephine Maita initiating the above two cases and the Alleged Debtors' Motions to Dismiss the same on February 7, 2007 at 1:30 p.m.  The initial hearing was limited to several discreet issues as set forth hereinafter.  This is a matter which arises under Title 11 and in a case under Title 11.  It is, therefore, a core proceeding under 28 U.S.C. §157(b)(2).  This Court has the jurisdiction to enter a final order under 28 U.S.C.

1

§1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151, and the Standing Order of Reference of the United States District Court for the Western District of Texas referring all bankruptcy matters to the Bankruptcy Court.

Josephine Maita ("Maita") is the aunt of the Alleged Debtor Teresa M. Green.  Teresa M. Green and Henry Alan Green are married. Maita holds a judgment against both Henry and Teresa Green in the face amount of $555,188.98, which judgment was issued by the Superior Court of California for the County of Alameda on April 18, 2006.  Maita registered the California judgment in Texas in Cause No. D-1-GN-06-001621 in the 126th District Court of Travis County, Texas via Notice of Filing Foreign Judgment Pursuant to the Uniform Enforcement of Foreign Judgments Act.  This judgment is recorded in Vol. 06131, Page 1317 in the 126th District Court of Travis County, Texas.  Maita then filed an Abstract of Judgment in the Official Public Records of Travis County, Texas at Doc. No. 2006136046 on July 12, 2006.

This case is not the first brush with bankruptcy that the Greens have had.  They initiated a voluntary Chapter 7 petition on January 11, 2005 under Case No. 05-10196.  Maita was a creditor of the Greens at that time although her claim had not been reduced to judgment.  Maita objected to the entry of a discharge in that prior case.  After trial, this Court denied the Greens a discharge of their indebtednesses finding violations of 11 U.S.C. §727(a)(2)(A)

and 11 U.S.C. §727(a)(4)(A).

The Greens had sold their home in California in June 2004 with net cash proceeds in excess of $1.1 million [only $75,000.00 of which was non-exempt under the laws of the State of California] liquidated their Fidelity Investment account netting $300,000.00 plus, and, along with an additional $60,000.00, purchased for cash a residence in Austin, Texas for approximately $1.44 million.  This Court found that the Greens had invested virtually all of their non-exempt property [almost three times the amount to pay Maita her claim] in an exempt homestead in Texas with the actual intent to defraud Maita and the Greens' other creditors.  Additionally, the Debtors had failed to disclose certain financial transactions which had occurred in April 2004 as required by the Schedules and Statements of Affairs.

The instant Involuntary Petitions were filed by Maita primarily due to the change of the federal exemption laws occasioned by the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  The relevant provision, 11 U.S.C. §522, was amended so that if a debtor elects to exempt property under state law and such debtor has acquired during the 1215-day period preceding the filing of the petition real property that the debtor uses as a residence or a homestead, then to the extent the value of the equity in such property exceeds $125,000.00, it is not entitled to be exempted.  See 11 U.S.C. §522(p)(1)(B) and (D).

3

Accordingly, if Maita is successful in having an order for relief entered in these two cases, the Alleged Debtors' state law homestead exemption on their house, now worth 1.7 million, will be limited to $125,000.00 thereby freeing up more than enough funds to pay Maita and all other creditors in full; still leaving a significant excess for the benefit of the Debtors.

## ISSUES

**1.** If there are fewer than 12 holders of such claims against either of the Greens, is Maita precluded from being a petitioning creditor because she is an insider?  The language of 11 U.S.C. §303(b)(2) says that if there are fewer than 12 "such holders", excluding an insider, then the involuntary case can be commenced by one or more of "such holders".  The question is whether the language excluding an insider from being counted as a claim holder also excludes an insider from being a petitioner.

**2.** Since Maita has an abstract of judgment on file in Travis County, is she a creditor "secured" by the homestead and, therefore, ineligible to be a petitioning creditor?

**3.** Is there an exception to the statutory requirements set out in §303(b)(2) of the Bankruptcy Code if the Greens each have more than eleven creditors?

**4.** Which of the 19 alleged creditors claimed by both of the Greens actually qualifies as such under 11 U.S.C. §303(b)?  Stated another way, do either of the Greens have twelve or more holders of

4

such qualified claims?

**Sub-Issue**: Are non-recourse creditors to be counted – i.e. what is the proper interpretation of "holder of a claim against such person" as used in 11 U.S.C. §303(b)(1)? The rules of construction set out in 11 U.S.C. §102(2) states that a "claim against the debtor" includes a claim against property of the debtor (non-recourse secured claims); however, 11 U.S.C. §303(b)(1) states that those creditors whose claims are to be counted for involuntary purposes are those which hold a "claim against such person". Does that difference in language mean that non-recourse creditors are excluded from the count as well as community claims of a spouse who has not actually incurred the debt?

<u>Conclusions of Law</u>

**1.** <u>If there are fewer than 12 holders of such claims against either of the Greens, is Maita precluded from being a petitioning creditor because she is an insider?</u>

It is undisputed in this case that Maita is related to Teresa Green and therefore is an insider as defined by 11 U.S.C. §101(31)(A)(i) of the Bankruptcy Code. The Greens urge that 11 U.S.C. §303(b)(2) which excludes "any employee or insider" of the debtor from being included as one of the "holders of such claims" for counting purposes also prevents Maita from being a petitioning creditor under §303(b)(2).

5

Section 303(b)(1) and (2) of the Bankruptcy Code sets forth the qualifications of a petitioning creditor.

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bonafide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than twelve such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable. . . by one or more of such holders that hold in the aggregate at least $12,300 of such claims;"

11 U.S.C. §303(b)(1) and (2)(West 2007).

Courts have struggled with the issue of whether, in cases involving 12 or less creditors, an insider has standing to file an involuntary petition.  Some courts support the Greens' position that an insider lacks standing to file an involuntary in cases with fewer than 12 creditors.  *See In re Gills Creek Parkway Assoc. L.P.,* 194 B.R. 59, 62 (Bankr. D.S.C 1995)(asserting in dicta that claims of employees, insiders and transferees of debtor are excluded from consideration in determination of single creditor's eligibility to file in involuntary petition); *In re Runaway II, Inc.,* 168 B.R. 193, 198 (Bankr. W.D. Mo. 1994)(dismissing case filed by insider where there were less than 12 creditors); *In re Kenval Mktg. Corp.,* 38 B.R. 241, 244 (Bankr. E.D. Pa.)("Creditors

6

attempting to file under ... §303(b)(2) . . . .are precluded from successfully filing if they hold voidable preferences."), *reconsideration denied,* 40 B.R. 445 (Bankr. E.D. Pa. 1984); *In re Kreidler Import Corp.,* 4 B.R. 256, 259 (Bankr. D.Md. 1980)(rejecting "the construction advanced... that preferred creditors are not counted but are eligible to join involuntary petition").

    *Runaway* sheds the most light on this view. *Runaway* noted:

> The phrase, "such holders" is used twice in §303(b)(2). The first use of "such holders" refers back to §303(b)(1) where a holder is "a holder of a claim against such person that is not contingent as to liability or the subject of a bonafide dispute". However, the first use of "such holders" is immediately followed by language excluding employees, insiders and creditors holding avoidable transfers. These exclusions modify the phrase "such holders" as it is used in subsection (b)(2). The second use of "such holders" refers to the first use of the phrase in subsection (b)(2) and its exclusions. The second use of the phrases "such holders" directly modifies the "one or more" creditor language. Thus, to file a petition under (b)(2), a creditor must hold a claim that is not contingent, subject to a bonafide dispute, nor be the claims of an employee, insider or transferee of an avoidable transfer.

*Runaway* 168 B.R. at 196

    A number of courts, however, have interpreted §303(b)(2) to allow an insider, employee or transferee to file an involuntary petition. *See Sipple v. Atwood (In re Atwood),* 124 B.R. 402, 405 n.2 (S.D. Ga. 1991)("Petitioning creditors. . . qualify [to file an involuntary petition] even if their claim is voidable."); *In re Little Bldgs. Inc.,* 49 B.R. 889, 890-91 (Bankr. N.D. Ohio 1985)(denying debtor's motion to dismiss involuntary petition filed

by insiders); *In re Kitchen Assocs. Inc.,* 33 B.R. 214, 215 (Bankr. W.D. La. 1983)("Under the plain meaning of 11 U.S.C. §303(b)(1) and (2), employees of the debtor may be petitioning creditors for involuntary bankruptcy of the debtor."); *In re Hopkins,* 177 B.R. 1 (Bankr. D. Me. 1995)(Former spouses and their children may be petitioning creditors because their entitlement to alimony and child support, respectively, makes them entities holding claims).

The *Little Bldgs.* court found contra to *Runaway* that:

> Under these provisions, a single unsecured creditor may file an involuntary petition against an alleged debtor if his claim is not subject to a bonafide dispute and is for at least $5,000 and if the alleged debtor has fewer than twelve creditors. Although the number of the alleged debtor's creditors may or may not be disputed in this case, it is important to note that §303(b) provides that in calculating the number of an alleged debtor's creditors, the claims of insiders and the claims of transferees whose transfers are subject to avoidance are not included. If after deducting the claims of insiders and avoidance transferees, an alleged debtor has fewer than twelve creditors, a single creditor is eligible to file an involuntary petition, irrespective of whether or not that creditor is, or at one time was, an insider. . .[T]he language of the section states, with mathematic-like certainty, that the claims of insiders are excluded only from consideration in determining the number of an alleged debtor's creditors. Insiders are still eligible to initiate involuntary proceedings against the entity they are or were associated with.

*Little Bldgs.,* 49 B.R. at 890-891.

Collier's also supports the *Little Bldgs.* rationale that "[a]lthough insiders are not counted as holders of claims for purposes of establishing the numerosity requirement in Section 303(b), these individuals can be petitioning creditors if they satisfy the other requirements." *Collier on Bankruptcy*

8

¶303.03[2](c)(iv), at page 303-36(15th ed. rev.).  Collier takes the same position with respect to creditors who have received voidable transfers.  *Id.* at ¶303.03[2](c)(v), page 303-36-37.

And, quite frankly, there is another way to read the statute rather than how the court in *Runaway* chose to read it.  The first "such holders" in §303(b)(2) can refer back to §303(b)(1) "holder of a claim" and the second "such holders" in §303(b)(2) can just as easily be read to refer back to "holder of a claim" in §303(b)(1) as well.

The better reasoned reading of the statute is that it does not exclude employees, insiders, etc. from being petitioning creditors under §303(b)(2).  This is especially true when one looks at the legislative reasoning as to why these type creditors were excluded from counting purposes in the first place.  *See In re Skye Mktg. Corp.,* 11 B.R. 891, 897 (Bankr. E.D.N.Y 1981).  The *Skye* court points out:

> The detailed rules governing the counting of creditors have their origin in policy considerations which, to an extent, are conflicting.  One such policy is based upon the fear that involuntary bankruptcy proceedings might be used by one or two recalcitrant creditors as a means of harassing an honest debtor.  Populist Members of Congress, in debating the bill which was later adopted as the Bankruptcy Act of 1898, decried the involuntary bankruptcy provisions as an "engine of oppression" and "intended to bind hand and foot the debtors of this country and place them in the vise-like grip of the greedy cormorants of the country." 31 Cong. Rec. 1803, 1851 (remarks of Congressmen Henry and Sparkman), quoted in *In re Gibralter Amusements, Ltd.,* 291 F.2d 22, 27 (2d Cir. 1961)(Friendly, J., dissenting).  In order to allay these fears, the requirement of three petitioners was adopted as a general rule, and single creditor petitions were permitted

9

only in cases in which there were fewer than twelve creditors. Another fear was the possibility that the threat of an involuntary proceeding would be used to compel the debtor to make preferential payments to one or two litigious creditors. A competing consideration was the avoidance of collusion between the insolvent debtor and friendly creditors through which an involuntary petition might be defeated.  To be sure, a creditor who is being paid lacks an incentive to join an involuntary proceeding because of the risk that a portion of his claim would be sought as a preference by the trustee while the balance of his claim would be discharged in bankruptcy. Insiders who have become creditors of their businesses are deterred by similar considerations from joining in an involuntary petition.  Indeed, in considering the statutory predecessor of subsection (b)(2)[1] it was said that (t)he detailed ground rules for "counting creditors," laid down by s 59, sub e, indicate that the principal Congressional fear of abuse was not that a debtor would be too easily petitioned into bankruptcy rather that through connivance with friendly creditors that insolvent debtor[s] might be able unfairly to hamstring one or two large creditors. . .*Id.* at 25 (citation omitted).  Thus, the compromise was to require three petitioners to join when the eligible claimants number more than twelve, a single petitioner when they do not, and exclude from the class of claimants who may be counted those who lack an incentive to join an involuntary petition.

Congress continued to adhere to this compromise in adopting the Bankruptcy Reform Act of 1978.  Those who would be deterred from joining the effort to petition a debtor into bankruptcy by their status as preferred creditors are not to be counted according to the dictates of section 303(b)(2) of the Code.

*Skye*, 11 B.R. at 897-898.

Given this potential lack of incentive to join or file an

---

[1]Section 59(e) of the Bankruptcy Act, 11 U.S.C. s95(e) provided as follows: In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted (1) such creditors as were employed by the bankrupt at the time of the filing of the petition; (2) creditors who are relatives of the bankrupt or, if the bankrupt is a corporation, creditors who are stockholders or members, officers or members of the board of directors or trustees or of other similar controlling bodies of such bankrupt corporation; (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; (4)secured creditors whose claims are fully secured; and (5) creditors who have received preferences, liens, or transfers void or voidable under this Act.

involuntary petition, one can postulate that Congress could not have possibly intended that the parties excluded for counting purposes under (b)(2) should also lack standing to file an involuntary petition.  It is because they may lack incentive to join in that these parties were excluded from the count.  Congress sought to avoid possible collusion between the insolvent debtor and friendly creditors through which an involuntary might be defeated by artificially increasing the total number of creditors so at least three would be required to file a petition.  Here, Maita, although an insider, is not in collusion with the Debtors.  She, in fact, seeks redress from the fraud the Debtors have perpetrated upon her.  Maita may be a petitioning creditor under 11 U.S.C. §303(b)(2).

2. <u>Since Maita has an abstract of judgment on file in Travis County, is she a "secured" creditor and, therefore, ineligible to be a petitioning creditor?</u>

To moot this question, Maita has waived her judicial lien by written waivers filed with the Court on February 27, 2007 in both Henry and Teresa Greens' bankruptcy cases.  Attached to both waivers is a copy of the Release of Abstract of Judgment executed by Maita on February 22, 2007 and subsequently filed of record in Travis County, Texas on February 27, 2007 in the Official Public Records.

A secured creditor may waive security for all or a portion of its claim, to meet the aggregate unsecured debt requirement of §303(b).  *In re All Media Properties, Inc.,* 5 B.R. 126, 141 (Bankr. S.D. Tex. 1980), *affirmed and bankruptcy court opinion noted with approval* at 646 F.2d 193 (5th Cir. 1981); *In re American Gypsum Co.,* 31 B.R. 187, 189 (Bankr. D.N.M. 1983); *CC Britain Equities, L.L.C. v. Allen-Main Associates Limited Partnership (In re Allen-Main Associates Limited Partnership),* 223 B.R. 59 at 61 (2nd Cir. BAP 1998).

Even without the waiver, the alleged "secured" status of Maita's claim is a specious argument.

The Greens asserted at trial that the involuntary petitions should be dismissed because, according to the Greens, the two petitioning creditors do not hold unsecured claims aggregating at least $12,300.00 as required under 11 U.S.C. §303(b)(1).  In taking this position, the Greens have asserted that Maita is a fully secured creditor in this proceeding because she filed an abstract of her judgment against the Greens in the Official Public Records of Travis County, Texas (Debtors' Exhibit 46) which the Greens argue attaches to their homestead. Determination of secured creditor's claim for purposes of an involuntary petition is governed by state law[2].  *See In re Harman,* 243 B.R. 671 (Bankr.

---

[2]Other than his exempt homestead, Harman, [the debtor], had no real property upon which the abstracted judgment could attach a judgment lien. *Harman* at 674 (Although debtor owned the homestead as of the involuntary petition date and petitioning creditors had

N.D. Tex., 1999)

The filing of an abstract of judgment under Texas law does not create a valid and enforceable lien against a judgment debtor's homestead. *Hoffman v. Love,* 494 S.W. 2d 591, 593-94 (Tex. Civ. App.-Dallas 1973), *writ ref'd n.r.e. per curiam* at 499 S.W.2d 295 (Tex. 1973)(ruling that a purchaser of the property had standing to challenge the validity of the lien and that "a judgment, though duly abstracted, never fixes a lien on the homestead so long as it remains homestead"); *Harms v. Ehlers*, 179 S.W. 2d 582, 583 (Tex. Civ. App.-Austin 1944), *writ ref'd*, (ruling that because the property in question had been the homestead of the deceased judgment debtor without interruption until the time of his death, "no abstract of judgment lien could or did attach thereto during his life" and the property passed to his probate estate, free of any lien.)

To support their contention that Maita is fully secured, the Greens cite *Davis v. Davis (In re Davis),* 170 F.3d 475 (5th Cir. 1999). Here, the Fifth Circuit did not hold that the filing of an abstract of judgment creates a valid lien on a Texas homestead. The 5th Circuit's holding was that the exemption provisions of the Bankruptcy Code, as they existed at the time of that decision, did not preempt state exemption laws, so as to create a lien or other

---

abstracted their judgments, the court made no further mention of the exempt homestead and yet determined that the petitioning creditors were unsecured).

substantive collection right.  In other words, once the property is exempted from property of the estate, the parties are relegated to their rights and remedies under applicable nonbankruptcy law.  The Court stated in its holding:

> For all these reasons, we conclude that §522(c)(1) does not "create liability" of exempt property for specified debts following bankruptcy.  Instead, the section permits creditors holding such claims to proceed against the property after bankruptcy based on the rights and remedies they would have had under state law if bankruptcy had never been filed.

*Id.* at 481.

Even if a lien is considered perfected against the homestead, it is not enforceable unless it secures payment for those certain type debts enumerated in Tex. Const. Art. XVI, §50.  See *Exocet, Inc. v. Cordes,* 815 S.W.2d 350, 352 (Tex. App.-Austin 1991, no writ)(Debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting to enforce the perfected lien).  Maita's judicial lien cannot be enforced against the homestead.  Maita, therefore, cannot foreclose on the Greens' homestead.  Her lien would then, even if it attaches, have no value, and she should be considered totally unsecured.

Maita, even without waiver of her judicial lien, can be a petitioning creditor because for §303 purposes her abstract of judgment did not create a lien which is enforceable against the Greens' homestead.

14

3.   Is there an exception to the statutory requirements set
out in §303(b)(2) of the Bankruptcy Code if the Greens each have
more than eleven creditors?

At trial Maita asserted that, if the Greens had more than
eleven creditors each, there should be an exception to the
statutory requirements set out in Bankruptcy Code §303(b) due to
exigent circumstances relying on *In re Moss,* 249 B.R. 411 (Bankr.
N.D. Tex. 2000).  See also *In re Norriss Bros. Lumber Co., Inc.,*
133 B.R. 599 (Bankr. N.D. Tex. 1991).  This is a judicially created
exception when the debtor has engaged in "fraud, trick, artifice or
scam" and where the debtor has made fraudulent conveyances or
preferential transfers or engaged in other misconduct *vis-a-vis* his
or her creditors.  *Moss*, 249 B.R. at 424.

Maita urges this Court to apply this exception if the Greens
prove the existence of more than eleven creditors each.  This Court
did find that the Debtors transferred property having a value in
excess of $1,000,000 within one-year prior to their voluntary
bankruptcy filing with intent to hinder, delay or defraud their
creditors (Adversary Proceeding No. 05-1085).  In that same
proceeding, this Court found that there were numerous material
omissions and misstatements in the Greens' bankruptcy Schedules and
Statement of Financial Affairs.

In addition, the record from this trial indicates that the
Greens are living an extravagant lifestyle, while certain

15

creditors of theirs remain unpaid. They continue to live in a paid-for house that is now worth $1.7 million and have the resources to take luxury vacations.

The Court condones neither the Debtors' past fraudulent behavior nor their current behavior. However, this Court must abide by the statutory construction of §303(b). The statute is clear on its face and contains no fraud exception. As such, the Court must rely on its review of the Greens' claims to determine whether an order for relief with respect to this involuntary proceeding can be entered.

4. Which of the 19 alleged creditors claimed by both of the Greens actually qualifies as such under 11 U.S.C. §303(b)? Stated another way, do either of the Greens have twelve or more holders of such qualified claims?

**Sub-Issues**: What is the proper interpretation of "holder of a claim against such person" as used in 11 U.S.C. §303(b)(1)? The rules of construction set out in 11 U.S.C. §102(2) state that a "claim against the debtor" includes a "claim against property of the debtor" [which would include non-recourse secured claims]; however, 11 U.S.C. §303(b)(1) states that those creditors whose claims are to be counted for involuntary purposes are those which hold a "claim against such person". Does that difference in language mean that non-recourse creditors are excluded from the count? And, does that mean that a claim against one spouse in a

16

community property state should not be counted as a claim against the other spouse for the purposes of §303(b)?

Bankruptcy Code §303(b) provides that an involuntary case may be commenced by three or more entities or if there are fewer than twelve creditors, by one entity.  To be counted each creditor must be a holder of a "claim against such person that is not contingent as to liability or the subject of a bonafide dispute as to liability or amount".  11 U.S.C. §303(b)(1)(emphasis added)(West 2007).  The language "claim against the debtor" is defined in §102 to include non-recourse claims against the property of the debtor. 11 U.S.C. §102(2)(West 2007).  "Claim against such person" in §303(b)(1) is, however, not defined.

"Community claim" is defined in §101(7) as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case". 11 U.S.C. §101(7)(West 2007).  State substantive community property laws generally allow entities holding claims against one spouse incurred during marriage to reach the community property of both spouses.  TEX. FAM. CODE ANN. §3.202 (Vernon 2007).  CA. FAM. CODE ANN. §910 (West 2007). This is true in both Texas and California. However, it does not mean that the spouse is personally liable for claims made against the other spouse. *Latimer v. City National Bank of Colorado City,* 715 S.W.

2d 825 (Tex. App.-Eastland 1986, no writ)(Wife of promissory note maker, whose signature did not appear on any of the notes, was not personally liable on them.); See CA. FAM. CODE ANN. §914 (Statute defines the specific instances when a spouse is personally liable for debts incurred by the other spouse; personal liability does not attach to all debts incurred by a spouse during the marriage). The only instances when personal liability is imposed is when: (1) the individual's spouse acts as an agent for the individual (and the Family Code makes clear that one spouse does not act as an agent for the other spouse solely because of the marriage relationship); or (2) the spouse incurs a debt "for necessaries". TEX. FAM. CODE ANN. §3.201(a)(Vernon 2007). California has a similar liability scheme. CAL FAM. CODE §914. Even though Greens' counsel alludes in his closing argument that some of the Greens' debts were "for necessaries", there was no evidence presented as to which debts, if any, constituted such, and there were no assertions or evidence regarding either of the Greens acting as an agent for the other. Even so, giving the debtors the benefit of liberal interpretation, the Court has presumed one debt [Clinical Pathology] as a "necessary" since it was a medical bill concerning their child.

This means that a creditor with a personal liability claim against the "incurring spouse" cannot be counted as a holder of a claim against a "non-incurring spouse" even though it will have a "community claim" in the non-incurring spouse's estate if an order

18

for relief is entered. Collier on Bankruptcy, §303.03[2][c][viii] at 303-37-38. 15th Ed.  See also, *In re Karber,* 25 B.R. 9, 13 (Bankr. N.D. Tex. 1982)(citing Collier's).  Stated another way, even though a creditor of the non-incurring spouse may have a community claim against that spouses' interest in the parties' community property, that is not sufficient. It is clear that for a creditor to be "counted" under §303(b)(1) it must hold a claim against the "person", i.e. the alleged debtor must be personally liable for the creditor's claim in order for that creditor to be "counted". If a claim against property was to be included, Congress clearly could have said so.  It did not.  And, the primary reason why claims against property were most likely not included is that holders of those claims have a remedy outside of bankruptcy [foreclosure against their collateral] whereas holders of unsecured claims against the person do not.  Therefore, non-recourse secured creditors may not be counted.  And, unsecured creditors whose sole remedy is to look to community property for satisfaction of their debt [or to the personal liability of the incurring spouse] may not be counted as holders of "claims against the person" of the non-incurring spouse under §303(b).  This Court reviews the claims to be counted on this basis with due deference to who has the burden of proof.

The Greens bear the initial burden of proving that each has 12 or more creditors.  *In re Rothery,* 143 F.3d 546, 549(9th Cir.

1998).  Bankruptcy Rule 1003(b) instructs that a debtor, who professes to have more than 12 creditors, must file an answer, including a list of all creditors with their names and addresses, a brief statement of the nature of the claims and the amounts thereof.  Once the debtor files his list of creditors in compliance with Bankruptcy Rule 1003(b), the petitioner has the burden of showing that the debtor has less than 12 bonafide creditors.  *In re Braten,* 99 B.R. 579, 582 (Bankr. S.D.N.Y. 1989); see also *In re James Plaza Joint Venture,* 67 B.R. 445, 448 (Bankr. S.D. Tex. 1986).  Compliance with Bankrutpcy Rule 1003(b) is a condition precedent to the burden shifting to the petitioning creditor.  The Court will review the creditors taking into consideration this burden.

Creditor by Creditor Anaylsis

1)  Charles Nettles, Mr. Nettles was the Greens' former bankruptcy attorney in their prior Chapter 7 proceeding and the related discharge litigation who the Greens "stiffed" to the tune of $6,100. (Debtors' Exhibit 1).  Mr. Nettles invoice is addressed to both Mr. and Mrs. Green; he clearly represented both; and he is a valid creditor of both.

2)  General Electric Capital Corp.  Henry Green signed a personal guaranty of a secured obligation of Maita Brothers, Inc. in 1998.  (Debtors' Exhibit 2).  Mrs. Green did not execute the guaranty and is not personally liable on such.  Mr. Green explained

20

that Maita Brothers, Inc. entered into a General Assignment for the Benefit of Creditors in August, 2004 (Debtors' Exhibit 25) and that he has no idea what the Assignee received from the sale of GECC's collateral.  Mr. Green did testify that he called and obtained a balance due from GECC as of the date of the trial of $37,560.00. Maita has the burden of proving GECC is not a valid creditor.  Mr. Green's unobjected-to hearsay testimony carries the day.  GECC is to be counted as a creditor of Mr. Green.

3) <u>Zion Credit Corp</u>. (Debtors' Exhibit 5).  This creditor is similar to that of General Electric Capital Corp. Mr. Green testified that he has had no communication from Zion since the time of the Assignment for Benefit of Creditors.  But, he has called and obtained a balance from Zion in the amount of $32,500 as of the date of the trial.  No documentation was produced to verify how much is owed or how it was calculated, and no accounting was submitted with respect to the liquidation of Zion's collateral. However, giving Mr. Green the benefit of the doubt on his unobjected-to hearsay testimony, the claim will be counted as one of his creditors.  It will not be counted as one of Mrs. Green's.

4) <u>Randy Bridges</u> (Debtors' Exhibit 3).  This is a business debt of Henry Green only.  It arises out of a guaranty by Mr. Green and others of a 2003 Promissory Note executed by third parties, related to the business of Maita Brothers, Inc.  Mrs. Green has no personal liability.

5) <u>Volkswagen Credit</u> (Debtors' Exhibit 4).  This is an automobile lease signed only by Teresa Green.  The lease is currently not in default and testimony indicated that the Greens intend to continue paying on the lease until paid in full.  Maita contends that this claim should not be counted as a lessor does not have a "claim" under bankruptcy law unless the lease is rejected under 11 U.S.C. §365.  This is not, however, the relevant inquiry. The lease is a current claim against "the person", Mrs. Green. There is personal liability if it is not paid.  It will be counted against Mrs. Green only.

6) <u>US Bank</u> (Debtors' Exhibit 16).  This is also an automobile lease.  The billing statements reflect both Mr. and Mrs. Green as lessees. This is a claim against both Mr. and Mrs. Green.

7) <u>Fidel Del Torro, DDS</u> (Debtors' Exhibit 11).  This party is providing ongoing orthodontic care for one of the Green's children. It is unclear whether this is actually a "debt".  The only evidence produced is an unexecuted contract showing Mr. Green as the "Responsible Individual".  Mr. Green testified that the agreed price for the total services is $4,600 and that he made a down payment of $1,086.00 with $3,394 to be paid in 18 monthly installments of $183.00. Dr. Del Torro has future services to perform.  However, this is a personal services contract.  There is no liability unless and until services are rendered by Del Torro. There is no contractual obligation on either of the Greens if they

22

choose to stop using Del Torro's services and go to someone else. This is not a claim within the meaning of §303(b)(1) as the payments were current on the petition date.

8) <u>Clinical Pathology</u> (Debtors' Exhibit 6). The only evidence of this debt is a billing dated November 8, 2004 which is prior to the Greens' first bankruptcy case. The Greens also listed this debt in their schedules in the first bankruptcy case. Henry Green acknowledged that he has paid several other invoices to Clinical Pathology since this invoice, and he is paying for all current services provided by this party. This, however, appears to be still owing even though the Greens' discharge was denied in their prior case. Maita presented no evidence to the contrary. The bill is in the name of the Green's child, Jordan. Neither Mr. nor Mrs. Green's name appears on the bill. The Court, will, in an abundance of caution, consider the same as the responsibility of, and a personal claim against, both Mr. and Mrs. Green.

9. <u>Graebel Van Lines</u> (Debtors' Exhibit 7). This is the balance owed Graebel for moving services when the Greens moved from California to Texas in 2004. The invoice is directed to Henry Green only and will be considered only a debt of Mr. Green.

10. <u>Encore Bank</u> (Debtors' Exhibit 12). This is a home equity line of credit against the Greens' property at 4201 Hidden Canyon Cove. This line of credit is for $220,000 but is only partially drawn against ($24,000 as of the petition date). This is a non-

23

recourse obligation.  TEX. CONST. ART. XVI, §50(a)(6)(C).  As such, it is not a "claim against such person" within the meaning of §303 and will not be counted against either Mr. or Mrs. Green.

11. <u>Bank of America Visa</u> (Debtors' Exhibit 13).  This is a credit card in both Mr. and Mrs. Greens' names.  However, Mr. Green's testimony was clear that this card is paid off each month. He testified that his credit cards are simply being used as a convenient way to pay for ordinary routine expenses, and that he usually does not carry a balance on them.  They are routinely paid in full each month.  Debtors' Exhibit 13, page 17 indicates there was a balance on the account of $663.03 as of the petition date. Even though it was billed pre-petition it was not due until November 14, 2006.  And, it was in fact, paid in full on November 8, 2006 in accord with the Greens' normal practice.  Regardless, and even though a good argument could be made for this being treated in the same manner as routine recurring monthly bills such as utilities and the like [and not counting it], in an abundance of caution this will be counted as a creditor of both Mr. and Mrs. Green.

12. <u>CitiAdvantage World Master Card</u> (Debtors' Exhibit 14). This is a credit card account allegedly used by both Mr. and Mrs. Green but Plaintiff's Exhibit P-10 indicates it is billed only to Mr. Green.  Again, however, it is the Debtors' practice to pay off their credit card balances in full each month.  Debtors' Exhibit 14

indicates there was no billed and unpaid balance on the account as of the petition date.  Page 14 of the Exhibit indicates the balance of the account then due was paid in full on October 27, 2006.  Page 16 shows the account was not billed again until November 7, 2006 after the involuntary petitions were filed.  This is, therefore, a post-petition debt of Mr. Green.  As such, it cannot be counted as a pre-petition creditor.

13.  <u>Citi Advantage Card</u> (Debtors' Exhibit 19).  This is another credit card, but the account is billed in the name of Joan Green, Henry Green's mother.  Mr. Green testified that he and his wife each have a card on this account and that they are permitted users.  He also testified that his credit report showed him responsible for this debt.  However, he did not produce the credit report.  And, most, if not all of the charges incurred appear to be his mother's charges.  The Greens produced no other evidence reflecting that they were liable on this account other than copies of their credit cards for the account merely reflecting that they may be authorized users (Debtors' Exhibit 22).  This account cannot be included for counting purposes.

14. <u>Eanes Independent School District</u>  (Debtors' Exhibit 9).  Page 1 of Debtors' Exhibit 9 is a proof of claim filed in the Greens' prior bankruptcy.  It is for ad valorem taxes for a prior year on the homestead at 4201 Hidden Canyon Cove.  Mr. Green testified that this bill had been paid pre-petition and that it is

his practice to pay his property taxes annually.  Page 2 of the Exhibit is a copy of the 2006 bill.  Even though the taxes are not due and payable until January 31, 2007, personal liability attaches as of January 1, 2006.  Therefore, this qualifies as a pre-petition claim against the person of both Mr. and Mrs. Green.  *In re Midland Indus. Service Corp.,* 35 F.3d 164, 166 (5th Cir. 1994).

15.  Akawie & La Pietra (Debtors' Exhibit 8).  This is a bill from a California law firm addressed to Henry Green (billed "care of" Stanley Green in San Jose, CA), for legal services rendered relating to the business of Maita Brothers, Inc.  The testimony elicited from Mr. and Mrs. Green regarding this claim is that the law firm represented both the Greens in connection with Maita's judicial collection of the note.  The law firm negotiated a Confession of Judgment (Debtors' Exhibit 24) that Mr. and Mrs. Green executed.  As such, this should be considered a liability of both Mr. and Mrs. Green.

16.  Drs. Des Rosier and Werneke (Debtors' Exhibit 15).  This is a medical bill for services provided to Teresa Green.  This is solely Teresa Green's debt.

17.  Kent Kuhlmann.  Henry Green testified that when he was in California in the summer or fall of 2006, that he borrowed $600 from his friend, Mr. Kuhlmann, to purchase birthday gifts for his wife and two of his children.  He also testified he had not repaid this loan as of the petition date.  There is no written

26

documentation of this claim except for the affidavit of Mr. Kuhlmann. Maita objected to the use of this affidavit as hearsay, and the Court sustained the objection. Further, saying a debt is a debt does not necessarily make it so without some documentation. Maita has rebutted the presumption that this is a valid creditor. The burden shifted to the Debtors to prove the legitimacy of the debt. The Greens have not met their burden on this one. This claim cannot be counted. The testimony of Mr. Green is not believable especially since he had access to three credit cards, two of which were routinely paid off on a monthly basis at the time of the alleged loan.

18. <u>Donna Brown</u> (Debtors' Exhibit 20). This is a debt of $24.50 owed by Mr. Green to an attorney for work performed prior to the Greens' first bankruptcy. It is clear from the Exhibit that Ms. Brown had a retainer substantially exceeding this amount and that when she returned the unearned portion of the retainer, she did not deduct the $24.50 because it was "pre-bankruptcy" debt. Mrs. Green's name does not appear anywhere on this account and should not be counted for purposes of her petition. Further, it is a de minimus claim that should not be counted against Mr. Green. *Denham v. Shellman  Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir. 1971).

19. <u>Citifinancial Retail Services</u> (Debtors' Exhibit 18). This is a consumer account of Mr. Green, which reflects a balance of

$2,649.94 as of May 7, 2006, nearly six months before the petition date.  Two monthly statements provided in Exhibit 18 indicate that no payments are due on the account and no interest accrues until April, 2007.  There is no documentary evidence in the record showing the balance owing on the petition date although the Court presumes it to be the same as existed May 7,2006.  Mrs. Green's name does not appear on this account nor was there any evidence that she is personally liable.  It is a claim to be counted against Mr. Green only.

The total claims for each are as follows:

<u>Total Claims of Henry Green</u>

1. Charles Nettles
2. General Electric Capital Corp.
3. Zion Credit Corp.
4. Randy Bridges
5. U.S. Bank
6. Clinical Pathology
7. Graebel Van Lines
8. Bank of America Visa
9. Eanes Independent School District
10. Akawie & La Pietra
11. Citifinancial Retail Services

<u>Total Claims of Teresa Green</u>

1. Charles Nettles
2. Volkswagon Credit
3. U.S. Bank
4. Clinical Pathology
5. Bank of America Visa
6. Eanes Independent School District
7. Akawie & La Pietra
8. Drs. Des Rosier and Werneke

Each of the Greens' has less than twelve claims.  As such,

Maita has met the filing requirements pursuant to §303(b) of the Bankruptcy Code and the involuntary petitions can be commenced against both Mr. and Mrs. Green by Maita as the sole petitioning creditor of each involuntary petition.

The Court, however, did not try the issue of whether the alleged Debtors were generally paying their debts as they become due as required by §303(h) of the Bankruptcy Code.  It is necessary for this issue to be tried before the Court can enter the full relief requested.

###